# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>v. )<br>REAL PROPERTY 4433 N. BAY RD )<br>MIAMI BEACH, FLORIDA 33140 )<br>FLORIDA 32836; )<br>)<br>REAL PROPERTY 1508 PENNSYLVANIA AVE )<br>UNIT 1B, MIAMI BEACH, FLORIDA 33139; )<br>)<br>4812 PINE TREE DRIVE, UNIT 203, )<br>MIAMI BEACH, FLORIDA 33140; )<br>)<br>ALL ACCOUNTS AT PAYPAL IN THE NAMES )<br>OF CATHERINE SZULZINGER, )<br>YARIV SUPRAVSKY, CAYA DIAMONDS, LLC )<br>CAYA 4433 LLC, CAYA 1508 LLC, )<br>CAYA 1508 1B LLC, CAYA 1512 LLC; )<br>)<br>THE CONTENTS OF ONE SAFE DEPOSIT BOX )<br>AT BANK OF AMERICA ACCOUNT ENDING )<br>IN 5258 IN THE NAME OF CATHERINE )<br>SZULZINGER; ) | Case: 1:18-mc-00114<br>Assigned To : Chutkan, Tanya S.<br>Assign. Date : 8/24/2018<br>Description: Misc. |

## UNITED STATES' EX PARTE APPLICATION
## TO REGISTER AND ENFORCE FOUR FOREIGN RESTRAINING ORDERS
## PURSUANT TO 28 U.S.C. § 2467(d)(3) AND 18 U.S.C. § 983(j)

Applicant United States of America, by and through its undersigned attorneys, respectfully submits this application for a restraining order pursuant to 28 U.S.C. § 2467(d)(3) and 18 U.S.C. § 983(j). This application seeks enforcement of a foreign restraining order issued by the Court of First Instance, in Antwerp, Belgium, in order to preserve the availability of U.S. assets that are subject to forfeiture in the Kingdom of Belgium. The assets will be restrained

1

pending the presentation of a final Belgian confiscation (forfeiture) order to the United States' central authority for execution pursuant to the relevant bilateral treaty.

On October 12, 2017, the Department of Justice's Office of International Affairs referred a mutual legal assistance ("MLA") request from the Kingdom of Belgium to the Money Laundering and Asset Recovery Section ("MLARS") of the United States Department of Justice. The request seeks the enforcement of four restraining orders issued by Examining Magistrate Judge Bie Melis of the Court of First Instance of Antwerp, Belgium; two of which were issued on September 15, 2017, as well as one of which was issued on February 12 and on February 13, 2018, respectively ("the Belgian restraining orders"). The first two restraining orders ordered the restraint against bank accounts located in the United States up to $5,138,567.43 held by Yariv Supravsky, Catherine Szulzinger, and Supravsky Diamonds BVBA, and specifically against one property located at 4433 N. Bay Road, Miami Beach FL, 33140.  See, Exhibit 2, AAG Certified Belgian Restraining Orders. The second set of restraining orders were issued against all accounts, jewelry, vehicles, safe deposit boxes, and assets held by the various CAYA business entities (Caya 1512 LLC, CAYA 4433 LLC, CAYA 4812 LLC, CAYA 1508 LLC), Yariv Supravsky, or Catherine Szulzinger. *Id.*  The second set of restraining orders also ordered the restraint of five real properties, including their rents. *Id.* The properties and assets which the United States is seeking to restrain, as listed in the Belgian restraining orders are:

(1) Real property located at 4812 Pine Tree Drive Unit 203, Miami Beach, FLO 33140, held by CAYA 4812 LLC, including all rental income;

(2) Real property located at 1508 Pennsylvania Avenue Unit 1B, Miami Beach, FL, 33139, held by CAYA 1508 1B LLC, including all rental income;

(3) Real property located at 4433 North Bay Road, Miami Beach, FL 33140, held by CAYA 4433 LLC, including all rental income;

(4) All accounts located at Paypal in the names of Catherine Szulzinger, Yariv Supravsky, Caya Diamonds, LLC, Caya 4433 LLC, Caya 1408 LLC, Caya 15081B LLC, Caya 1512 LLC; and[1]

(5) The contents of one safe deposit box at Bank of America in the name of Catherine Szulzinger, associated with account ending in 5258;[2]

The estimated value of the restrained property is $1.9 million US dollars; the Belgian orders are for a restraint of a maximum amount of $5,138,567.43. The United States is not seeking to restrain the additional two real properties which is listed in the restraining order, because, among other reasons, those real properties have low net equity thresholds (and so the cost of liquidating the assets and satisfying the existing liens could exceed the assets' value, once final Belgian restraining orders are obtained).[3]

On July 30, 2018 the Belgian restraining orders were certified for enforcement by the Assistant Attorney General ("AAG") of the U.S. Department of Justice's Criminal Division in accordance with 28 U.S.C. § 2467(d)(3) and (d)(3)(B)(ii). *See* Exhibit 1, AAG Decision.

---

[1] We have asked for the restraint of accounts in the name of CAYA 1508 1B LLC and Caya Diamonds LLC as we have located those corporate entities in Florida, and they are beneficially owned by Yariv Supravsky.

[2] The safe deposit box, Paypal accounts, and vehicle are not specifically described in the Belgian restraining orders, but are restrained both under general language that restrains all "[…] diamonds or other precious stones, income from the assets, safe deposit boxes, vehicles, or any other cash, securities, or assets located in the United States of America, to the total amount of USD 5,138,567.43 …" as well as the substitute asset provisions of Art 43 bis under Belgian Criminal Code. *See* Ex. 2, Belgian order issued February 13, 2018, page 2.

[3] These are the real properties located at 1512 Pennsylvania Ave Unit 1C, Miami Beach, Florida, 33139 and at 1508 Pennsylvania Ave Unit 5B, Miami Beach, Florida 33139.

Should this Court issue the attached Proposed Order, this U.S. restraint will preserve the assets for confiscation pending the conclusion of criminal and confiscation proceedings in the Kingdom of Belgium.

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

## II. FACTUAL BACKGROUND

The Belgian investigation has shown that the property to be restrained (with the exception of the contents of the Paypal accounts, which are restrained under Belgium's substitute asset provisions in Art 43 bis of the Belgian Criminal Code) are the proceeds of a diamond fraud scheme as discussed below.

Belgian authorities launched a judicial investigation at the beginning of February 2017 following several complaints against Yariv Supravsky, Meir Supravsky, and Supravsky Diamonds BVBA. All are Belgian nationals, some also hold Israeli citizenship. The firm operated in Antwerp and is owned by Yariv Supravsky; his father, Meir Supravsky, was also a partner in the firm. The complaints accused these Belgian nationals, the company, and others of fraud, theft, and criminal organization.[4] The total amount of fraudulent proceeds is estimated to

---

[4] The relevant Criminal Code Sections are Articles 490bis of the Belgian Criminal Code (fraudulent insolvency), 496, 491, 196 of the Belgian Criminal Code (fraud, abuse of trust, and forgery of documents), 324bis of the Belgian Criminal Code (criminal organization), and article 461 of the Belgian Criminal Code (theft). The restraint order was issued under Article 43bis of the Belgian Criminal Code, and Article 35 of the Belgian Criminal Procedure Code.

4

be well over $5 million.

According to Belgian investigators, Supravsky Diamonds BVBA was both a diamond broker and a diamond trader. As is typical for diamond brokers, due to their high cost, diamond brokers like Supravsky Diamonds BVBA, usually sell diamonds owned by suppliers on consignment, essentially sales subject to payment to the owner out of the proceeds with the broker getting a commission. A diamond trader has a stock of diamonds, and also cash and loan receivables and uses this as collateral or leverage to buy and sell diamonds on the open market in the hopes of turning a profit, similar to a stock broker. According to the Belgian investigators, and as Supravsky himself admitted at his interview,[5] he did not repay his diamond suppliers (which were both consignment sales and trades) the $5,138,567.43 which he owed them.

In or around 2014, Supravsky and his wife told certain people they intended to move to the United States, due to heightened incidents of anti-Semitism against the Jewish community in Brussels, where they resided. However, Supravsky did not tell his suppliers and creditors of his intention to move because, as he admitted to the Belgian investigators during his interview, they would no longer be willing to extend him credit. According to an analysis of his business records, Supravsky took out loans from his customers in increasing amounts. He also took out a "loan" to himself from the capital account of Supravsky Diamonds BVBA of over 2.8 million Euro (or approximately $3.5 million) around August 2016. Finally, according to Belgian

---

[5] Yariv Supravsky and Catherine Szulzinger were both interviewed at the US Attorney's Office on February 2, 2018, pursuant to a Commissioner's Subpoena filed in the Middle District of Florida at the request of the Belgian authorities. Dkt. 17-23007-mc-Cooke/CN 014. OIA referred the witness interviews and bank records subpoena to this district, since the accounts and witnesses were located there, and the restraint to MLARs.

investigators, between August 2016, and December 2016 (when all of the loans should have been paid), Supravsky Diamonds BVBA defaulted on <u>all</u> of its invoice amounts. The investigators determined the defaults were willful and intentional, as Supravsky admitted to importing over two million euros worth of diamonds into the United States,[6] and then transferred the diamonds to his family members residing in Israel, despite Miami having a thriving and active diamond district where he could easily have sold the diamonds and used those proceeds to at least partially repay his suppliers.

At the end of January 2017, Yariv Supravsky met with some of his debtors. He told them that he had financial problems and also owed money to the Israeli mob, but that he would repay the money that he owed them. According to the Belgian investigators, prior to this, the customers and suppliers were unaware that Supravsky had any business dealings with criminal organizations. However, despite Yariv Supravsky's representations, there is substantial evidence that Supravsky BVBA had no intention of repaying its debts at this time either. They had already begun moving money to Miami and Israel and also moved their residence to Miami. On December 22, 2016, the Supravsky family updated the national registry in Belgium with their U.S. address in Florida, and informed the children's school they were moving to the United States.

<u>Supravsky's U.S. Real Estate Purchases</u>:

To purchase the three properties subject to the Belgian restraining orders, the co-

---

[6] Yariv Supravsky appears to have imported the diamonds into the US without declaring their value to US Customs, as is required. Commercial imports of diamonds exceeding the value of $2,500 are required to be declared on Customs bond CBP Form 301. A bond and a Kimberly Certificate are required. *See, e.g.,* *https://customs.custhelp.com/app/answers/detail/a_id/344/~/what-are-the-requirements-for-importing-diamonds,-jewelry,-stones,-rubies,*

6

conspirators ultimately laundered proceeds of the diamond loan fraud by establishing and purchasing property using three Florida limited liability corporations (the CAYA LLC entities). To further launder the criminal proceeds of the diamond theft, and to try and evade Belgian law enforcement seizure of his assets, Yariv Supravsky named his wife, Catherine Szulzinger as the director of each of the CAYA limited liability corporations. However, Catherine Szulzinger was merely a nominee. She told Belgian investigators that she had no business or real estate experience, and had not worked in BVBA diamonds since a number of years. She became the manager of those corporations and signed various papers simply because her husband asked her to. She stated that it was her husband who paid various expenses on behalf of the CAYA LLC entities.

Yariv Supravsky funneled money from the diamond fraud in Belgium to real estate purchases in Miami as follows. All three properties to be restrained were acquired after August 2016, during the time on which Mr. Supravsky began defaulting on all of his diamond invoice amounts and loans. First, Yariv Supravsky loaned himself money from Supravsky Diamonds BVBA and transferred over $3.5 million from Supravsky Diamonds' corporate account in Belgium to his personal account in Belgium around August 2016. Next, Yariv Supravsky transferred a total of 1,658,805.48 Euros (or approximately $2,041,053.81) from his Belgian accounts to his personal Wells Fargo account in the U.S. in a series of transfers from October 2016 through December 2016. During the relevant time period, Yariv Supravsky also transferred a total of 582,187.48 Euros (or approximately $716,887.07) in a series of transfers from his personal Wells Fargo account to the account of Leopold Korn in Miami, Florida. Leopold Korn is a Miami real estate attorney who is the registered agent of several of the shell CAYA entities which hold the Florida real estate subject to the Belgian restraining orders.

The three properties which we seek to restrain are described as follows. The first property is held by CAYA 4812 LLC; the property is located at 4812 Pine Tree Drive Unit 203, Miami Beach, FL 33140. It was purchased on December 13, 2016 and has net equity of approximately $100,507. The second property is held by CAYA 1508 1B LLC,[7] and is located at 1508 Pennsylvania Avenue Unit 1B, Miami Beach, FL, 33139. It was purchased on November 29, 2016 and has approximately $106,425 of net equity. The final property is held by CAYA 4433 LLC and is located at 4433 North Bay Road, Miami Beach, FL 33140. It was purchased on September 7, 2016, and has net equity of approximately $1,826,932. Public records indicate that all of the properties except the North Bay Road property are managed by Catherine Szulzinger and have as their registered agent Leopold Korn. The North Bay Road property has an additional manager, Daniel Ettedgui, who appears to be merely a corporate nominee (as he is the director of Triangle Companies, a Miami Real estate Agency).

On September 15, 2017, Examining Magistrate Judge Bie Melis of the Court of First Instance of Antwerp, Belgium, issued two Court orders "to proceed to a preservation seizure of immovable property", or authorizing a restraint of real properties which also contained a judgment amount against "all bank accounts located in the United States up to $5,138,567.43", and specifically against one property located at 4433 N. Bay Road, Miami Beach, FL, 33140. The restraint orders were against the assets of Yariv Supravsky, Meir Supravsky, Catherine Szulzinger, and Supravsky Diamonds BVBA. On February 12 and 13, 2018, Examining Magistrate Judge Bie Melis issued two additional orders, but against the assets of Yariv

---

[7] The Belgian restraining orders issued on February 12 and 13, 2018, describes the property to be restrained accurately and names its correct Florida address, but has a typographical error. The holding entity is CAYA 1508 1B LLC, and not CAYA 1508, as described above. However, Yariv Supravsky is the beneficial owner of CAYA 1508 1B as described above.

Supravsky, Catherine Szulzinger, and the CAYA entities (CAYA 1512 LLC, CAYA 4433 LLC, CAYA 4812 LLC, CAYA 1508 LLC). The first order was against five real properties, but the United States is only seeking the restraint of three of these five real properties, as explained above. The second order was against all assets held by the various CAYA entities mentioned above to include bank accounts, safe deposit boxes, vehicles, and any assets, cash, or securities up to a total amount of $5, as well as income from the assets. *See* Exhibit 2.

Yariv Supravsky returned to Belgium on or about April 17, 2018, to face the charges against him. He was arrested upon his arrival to Belgium by the Belgian authorities, and was released conditionally pending further charges and trial. Catherine Szulzinger voluntarily returned to Belgium on June 7, 2018. The Belgian authorities will continue to update the United States through their Central Authority to the Office of International Affairs as to the status of the criminal case.

### III. LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable, final foreign forfeiture or confiscation judgment. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)). Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for and the court may issue a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

Section 2467(d)(3)(A) requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process

9

protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A). Consequently, the district court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, was issued by a foreign court that lacked subject matter jurisdiction, or was obtained by fraud. The statute's cross-references to § 983(j) do not require that criminal or civil forfeiture proceedings be filed in the United States to enforce a foreign court's restraining order, but rather, the foreign criminal or forfeiture proceedings initiated abroad should comport with U.S. notions of due process. *See* 28 U.S.C. § 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013) (holding that the filing of a foreign civil forfeiture complaint is not required, but that "applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely pending final forfeiture, should entail "procedural due process protections consistent with those that the filing of an American civil forfeiture complaint" would have afforded). In line with analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C. § 983(j), U.S. courts may issue orders appropriate to preserve property during the pendency of foreign criminal or forfeiture proceedings.

Certification by the U.S. Attorney General or his authorized designee that enforcement of the foreign restraining order is in the "interest of justice" is a prerequisite for enforcement of a foreign order. *See* 28 U.S.C. § 2467(b)(2). On May 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division.[8] The AAG's determination is not subject to judicial review. *See* 28

---

[8] The AAG Decision also restrained One Black Porche 2017 MACAN registered to CAYA Diamonds LLC, with VIN ending in 7056. However, on or about June 19, 2018 (or before the AAG Decision was signed), title was transferred to Preshanth B. Alva, Accordingly, we will not seek to restrain the vehicle, as it appears to have been purchased by a bonda fide purchaser for

U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## IV. DISCUSSION

### A. The Belgian Restraining Orders Meet the Criteria for Enforcement Under § 2467(d)(3)(A).

Section 2467 sets forth the following criteria that are relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign nation seeking enforcement of the order are parties to a formal, international agreement providing for mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether the foreign order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the foreign court had subject matter jurisdiction to issue the restraint, *Id.*; and (5) whether there is any reason to believe the foreign order was obtained by fraud. *Id.*[9] The Belgian restraining orders meet the above criteria for registration and enforcement pursuant to § 2467 and, therefore, entry of a U.S. restraining order is both necessary and appropriate to preserve the property for eventual final forfeiture by the Kingdom of Belgium.

1. <u>Agreement on Forfeiture Assistance</u>

First, the U.S. and Belgium are parties to a Mutual Legal Assistance Treaty.[10] Under

---

value.

[9] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process"). An affected party with a legally protected property interest may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process were defective.

[10] *See* Treaty Between the Government of the United States of America and the Kingdom of Belgium on Mutual Legal Assistance in Criminal Matters, U.S.-Belg., Jan. 28, 1988, S. TREATY DOC. NO. 100-16 (1988).

Article 2 of that Treaty, the United States is obligated to assist Belgium in forfeiture matters, including by taking protective measures to immobilize suspected criminal proceeds and instrumentalities; thus, the first criterion is satisfied.

2.   Attorney General Certification

Second, the Belgian restraining orders were certified by the Assistant Attorney General on July 30, 2018. *See* Exhibit 1. The AAG, in certifying the order, considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from where the order came, and has concluded that enforcement of the foreign restraining orders, pursuant to 28 U.S.C. § 2467, is "in the interest of justice." *Id.* Thus, the second criterion for enforcement is met.

3.   Due Process

Third, the Belgian Restraining Orders were issued consistent with due process. Art 43bis of the Belgian Criminal Code as well as Art 35bis of the Belgian Criminal Code specifies procedures to immobilize the proceeds of crime, including substitute assets in cases in which the assets cannot be located, have been dissipated, or have been removed beyond the reach of their Court's jurisdiction. The property owners are to be served with notice of any U.S. restraining orders entered. The two Belgian restraining orders entered September 9, 2017, were served on Yariv Supravsky and Catherine Szulzinger on February 7, 2018 by email and on February 8, 2018 by FedEx through their attorney in the United States, and by FedEx on their corporate managers of the Caya business entities in the United States (Catherine Szulzinger, Leopold Korn, and Daniel Ettedgui). The February 12 and 13, 2018, restraining orders were served on Yariv Supravsky and Catherine Szulzinger on February 13, 2018 by email and on February 14, 2018 by FedEx through their attorney in the United States, and by FedEx on their CAYA corporate

managers in the United States (Catherine Szulzinger, Leopold Korn, and Daniel Ettedgui). Yariv Supravsky returned to Belgium (knowing of the pending criminal charges) and was arrested upon his arrival by the Belgian authorities on April 18, 2018. He has been released conditionally until his trial. Supravsky has appealed the Court of First Instance's Decision twice; the first decision was upheld on February 20, 2018, and Supravsky appeared with counsel at the hearing for the second appeal and voluntarily withdrew that appeal. Under Belgian law, the orders are now enforceable and not subject to additional appeal at this time. They may, however, be appealed at a later stage in the criminal proceedings.

    4.    <u>Subject Matter Jurisdiction</u>

Fourth, the issuing Court (the Court of First Instance in Antwerp, Belgium), is authorized to issue the Belgian restraining orders. Similar to U.S. law, under Belgian law, venue for a criminal charges lies wherever one or more material actions took place. Here numerous acts of the co-conspirators central to the conspiracy took place in the Judicial District of Antwerp, Belgium. First, the co-conspirators, Meir Supravsky, Yariv Supravsky, and Catherine Szulzinger were residents within the Judicial District of Antwerp, Belgium when the loans and theft of the diamonds occurred. Likewise, their company Supravsky Diamonds BVBA was registered in this district, and nearly all of the initial wire transfers related to the conspiracy took place from banks located within the Judicial District of Antwerp to banks located in the United States. Supravsky has voluntarily submitted to the jurisdiction of that Court, first by flying back to Belgium to face the criminal charges, knowing that he would be arrested, and second, by withdrawing his second appeal.

Taking into account the presumption of regularity of foreign judicial proceedings and these facts, the fourth criterion for enforcement is met. *See In re Restraint of Certain Investment*

*Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d at 42.

     5.    <u>Absence of Fraud</u>

Fifth, taking into account the presumption of regularity in foreign proceedings and the facts known to the United States, there is no reason to believe that the Belgian restraining orders were obtained by fraud on the part of Belgian authorities. Accordingly, the five criteria pertinent in considering an application to enforce and register a foreign restraining order are satisfied.

**B.**    **Dual Forfeitability Is Satisfied.**

In an application to enforce a foreign restraining order (as opposed to a final judgment), the United States, on a plain reading of the statute, may not need to show that the criminal conduct supporting the foreign restraining order would also give rise to forfeiture if it had been committed in in this country. *See* 28 U.S.C. § 2467(a)(2)(A) (defining "forfeiture or confiscation judgments" in such a way that requires a showing of dual forfeitability); § 2467(d)(3)(A)(ii)(I) and (d)(3)(B)(ii) (setting out the procedures for enforcement of a foreign restraining order with no mention of, nor cross-reference to, the subsection of the statute concerned with dual forfeitability). In the published decisions of this Court, one judge *has* applied the requirement without discussion, and another *declined* to resolve the question of whether dual forfeitability must be demonstrated by the United States at the restraint phase. *Compare In re Seizure of Approx. $12,116,153.14 and Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 30 (D.D.C. Nov. 9, 2012) (stating that dual forfeitability is required when enforcing a foreign restraining order and deciding that the United States satisfied the requirement), *with In re Restraint of Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 41 (D.D.C. May 17, 2012) ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that applies to final orders of forfeiture . . . however, the Court need not resolve the question . . .

because, even assuming its applicability, it is satisfied in this case"). As a practical matter, the United States acknowledges that dual forfeitability may become relevant if and when the Kingdom of Belgium asks the United States to enforce a confiscation judgment and the United States applies to enforce such a final judgment.

Here, however, dual forfeitability is satisfied because the co-conspirators' underlying conduct would be chargeable under U.S. criminal law giving rise to forfeiture, had their conspiracy and other offenses been committed here. The Supravsky family set up several limited liability corporations to hold Florida real estate in the wife's name, in a scheme to conceal funds diverted from creditors around the world. Catherine Szulzinger knowingly accepted the transfer of titles to three real properties in Florida which represented the proceeds of a specified unlawful activity listed in Section 1956(c)(7), and knowing the transfers of funds were designed to conceal the nature, source, location, or ownership thereof or to promote the ongoing scheme. The conspirators are to be tried by Belgian authorities with crimes including money laundering where the underlying offense is fraud. The facts established would constitute financial transactions involving violations of mail and wire fraud in violation of 18 USC §§ 1341 and 1343, among other offenses. These would constitute violations of U.S. Money Laundering laws. 18 U.S.C. §§ 1956 and 1957. Money laundering is an offense authorized for forfeiture under U.S. law. *See* 18 U.S.C. § 981(a)(1)(A) (civil forfeiture of any property involved in a transaction in violation of the money laundering statutes); § 982(a)(1) (criminal forfeiture of property involved in money laundering offenses). Finally, the interstate or foreign transportation of more than $5,000 of

proceeds obtained by fraud by the co-conspirators violated 18 U.S.C. § 2314. These offenses are ones for which forfeiture would be available under federal law.[11]

### C. This Court Should Act to Enforce the Belgian Restraining Orders by Issuing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).

The Belgian restraining orders reflect the intention of the Belgian prosecutors to seek final confiscation orders following the final conviction of Yariv Supravsky. Thus, the United States, acting in accordance with its treaty obligations, seeks to guarantee the effectiveness of any future confiscation order against the suspect's U.S. assets.

Applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C. § 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the Belgian restraining orders—to "preserve the availability of property . . . subject to forfeiture" for the duration of the Belgian confiscation proceedings. See 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order *at any time before or after the initiation of foreign forfeiture proceedings*) (emphasis added). As such, this Court should recognize the Belgian restraining orders from the Court of First Instance in Antwerp, Belgium, and enforce it by restraining the specified assets and prohibiting Yariv Supravsky, Catherine Szulzinger, and all others, from affecting the real property in the United States. See Exhibit 1, AAG Certification and, Exhibit 2, the AAG Certified Belgian restraining orders. Should the Court grant this Ex Parte Application, the United States immediately will serve any resulting order on the affected

---

[11] See 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of any property which constitutes or is derived from proceeds traceable to wire or mail fraud violations not affecting a financial institution, or bank fraud violation); § 982(a)(2)(A)-(B) (criminal forfeiture of any property constituting or derived from proceeds obtained as the result of a violation of the mail, wire fraud, or bank fraud statute).

individuals and will record *lis pendens* against the property set forth herein.

## V. CONCLUSION

The United States respectfully requests that this Court enforce the attached Belgian restraining orders, consistent with U.S. obligations under the relevant treaty, by entering an order pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii), and 18 U.S.C. § 983(j)(1)(A). The United States will seek the assistance of the Belgian authorities in providing notice and a copy of any order issued by this Court to Yariv Supravsky, Catherine Szulzinger, Daniel Ettedgui, and Leopold Korn, once the assets are secured.

Respectfully submitted,

DEBORAH CONNOR, ACTING CHIEF
MONEY LAUNDERING AND ASSET
RECOVERY SECTION

By: _____
Allison Ickovic
Trial Attorney
U.S. Department of Justice
Criminal Division
Money Laundering and Asset Recovery Section
1400 New York Avenue NW, 10100
Washington, DC  20530
Telephone:   (202) 305-4234
Email:       Allison.ickovic@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA